COMMERCE FARM CREDIT CO. et al. v. SAYLES et ux. (No. 3014.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 7, 1926. Rehearing Denied Jan. 20, 1926.)

1. **Homestead**  ⟠⟿57½—**Location of land without or within city limits does not conclusively establish that homestead urban or rural.**

In determining whether a homestead is urban or rural, fact that land is within the limits of a town or city does not establish conclusively that the homestead is urban, nor does fact that it is outside such limits establish conclusively that it is rural; such question may be either one of fact for the jury, or one of law for the court.

2. **Homestead**  ⟠⟿57½—**Evidence held to show as matter of law that homestead not within incorporated city.**

Evidence that tract in question, alleged to be homestead, was located about 200 yards from boundary line of incorporated city, and that there were no houses between such land and boundary line, *held* to show as matter of law that land was not in the city, within meaning of Const. art. 16, § 51.

3. **Appeal and error**  ⟠⟿1068(3)—**Instruction, if erroneous as on weight of evidence, and misleading, held harmless.**

Instruction that different tracts of land, together not exceeding 200 acres, if not situated in a city, may constitute homestead, if resided on as a home or used for maintenance of family, if erroneous as on weight of evidence, and misleading, *held* harmless, where it appeared as matter of law that land for which trust deed sued on was executed was being used as a homestead at time of such execution.

4. **Homestead**  ⟠⟿115(2)—**Trust deeds on land constituting part of homestead invalid.**

Under Const. art. 16, § 50, trust deeds on part of homestead to secure husband's indebtedness for purchase price of other lands are invalid.

5. **Appeal and error**  ⟠⟿1008(1)—**Appellate court bound to give effect to jury's findings not sought to be set aside nor attacked on appeal.**

Where finding of jury that parties who executed trust deeds were not estopped from setting up fact that land was homestead as against foreclosure of such deeds was not sought to be set aside, nor attacked on appeal, appellate court is bound to give effect to such findings.

Appeal from District Court, Lamar County; Newman Phillips, Judge.

Action by Daniel S. Sayles and wife against the Commerce Farm Credit Company and others, wherein the Missouri State Life Insurance Company and others intervened. From the judgment, defendants and interveners appeal. Affirmed.

October 28, 1919, Daniel S. Sayles and E. Z. Sayles, his wife, owned 180 acres of land (in two tracts of 90 acres each) situated in Lamar county about 20 miles from Paris. On the day specified their daughter Minnie, acting for them and in their presence, signed their names to instruments in writing dated October 28, 1919, as follows: (1) A promissory note for $10,000, interest and attorney's fees, payable to the order of the Commerce Farm Credit Company November 1, 1920; (2) a deed conveying said 180 acres of land to Jozach Miller, III, in trust to secure the payment of said note; (3) four promissory notes, one for $501, and the others for $500 each, representing interest to accrue on said $10,000 note, payable to said credit company or bearer November 1, 1920, 1921, 1922, and 1923, respectively; (4) a deed conveying said land to said Miller as trustee to secure the payment of said four notes; (5) a promissory note for $8,500, interest and attorney's fees, payable to the order of Forrest H. Johnson November 1, 1920; (6) a deed conveying said land to said Miller as trustee to secure the payment of said note for $8,500. This suit was by said Daniel S. and E. Z. Sayles as plaintiffs against the Commerce Farm Credit Company, a corporation, Forrest H. Johnson, Jozach Miller, III, trustee, and R. A. Ritchie, alleged to be acting as a substitute trustee in the place of Miller as defendant. It was for an injunction restraining the defendants from selling or in any other way disposing of either the notes or land mentioned above, and for a decree canceling and annulling all of said notes and the trust deeds made to secure them so far as said notes and deeds evidenced a liability or indebtedness on the part of Mrs. Sayles to the holders of the notes, and canceling and annulling said note for $8,500 so far as it evidenced a liability or indebtedness on the part of Daniel S. Sayles to the holder thereof.

The grounds upon which the relief as to Mrs. Sayles was sought were: (1) That she was a married woman, that the land covered by the trust deeds belonged to her separate estate, and that the indebtedness evidenced by the notes were not for necessaries for herself or her children, nor for the benefit of her separate estate, but were for indebtedness of her husband, said Daniel S. Sayles, incurred by him in the purchase of land in the state of Oklahoma; (2) that the land was a part of the homestead belonging to her and her husband and their family, and that the trust deeds were therefore void; (3) that the notary public who certified that he had privily examined her separate and apart from her husband, and explained said trust deeds to her, did not do so, and that his certificate was false, in that he never so examined her nor explained said instruments to her, and she never acknowledged to him that she had signed said instruments, or either of them. With reference to the purported acknowledgments by Mrs. Sayles of the execution of said instruments it was alleged that defendant

---

⟠⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Forrest H. Johnson was present at the time and place same were purported to have been taken, and acted for and as the agent of the credit company, and knew that said notary did not examine Mrs. Sayles and explain said instruments to her.

The ground upon which the relief as to Daniel S. Sayles was sought was fraud practiced upon him, it was alleged, by Forrest H. Johnson. With reference to this it was alleged that, at the time said Daniel S. Sayles and his wife signed the note for $8,500, "they also signed ten or more other instruments of various kinds at the request of the defendant Forrest H. Johnson and the defendant Commerce Farm Credit Company, and neither of them knew that they were executing, acknowledging, and delivering the instrument in this section referred to as security for said $8,500 note and as a lien on the two tracts of land referred to in said instrument."

It was alleged further that, at the time said instruments were signed by said Sayles and his wife, said Johnson represented to them that the instruments to be executed by them were the note for $10,000, the trust deed to secure same, the note for $501, and the three notes for $500 each, the trust deed to secure same, and certain notes for land in Oklahoma, and a mortgage to secure same on said Oklahoma land, and that they relied upon such representation, and were thereby induced to sign said papers, including said note for $8,500 and the trust deed securing it, without reading or having same read to them.

In its answer the credit company alleged that before the suit was commenced it sold the $10,000 note for a valuable consideration paid to it; charged that Sayles and his wife were estopped from asserting that the latter did not execute and acknowledge the execution of the trust deeds as shown by the notary's certificates thereto; and by allegations in a cross-action sought judgment for the amount of the note for $501, and the three notes for $500 each, and a foreclosure of the trust deed made to secure same.

The Missouri State Life Insurance Company intervened in the suit as the owner of the $10,000 note, and Lottie C. Kemper, joined by her husband, W. T. Kemper, intervened therein as the owner of the $8,500 note. In its petition the insurance company alleged that Sayles and his wife had defaulted in the payment of interest coupons attached to the note, one for $605, due November 1, 1920, another for $600, due November 1, 1921, and another for $600, due November 1, 1922, and that it had exercised an option it had by the terms of the note to declare it also to be due and payable. The prayer was for judgment for the amount of the note and coupons, and for a foreclosure of the trust deed made to secure same. In her petition Mrs. Kemper alleged that she was the owner and holder of the $8,500 note, and she prayed judgment for the amount thereof, and for a foreclosure of the trust deed made to secure it. In supplemental petitions in reply to said pleadings by the interveners Sayles and his wife repeated allegations in their original petition hereinbefore referred to, relied upon to show invalidity of the notes and trust deed, and, in addition thereto, as a defense against the recovery sought by the insurance company against them on the $10,000 note and interest coupons, alleged that the transaction they evidenced was usurious.

In a supplemental answer the credit company alleged, with reference to the claim of Sayles and his wife, that the 180 acres of land was their homestead; that at the time the instruments mentioned above were executed Sayles and his wife were not residing upon said 180 acres or any part thereof, but were occupying, using, and claiming, and for about three years had occupied, used, and claimed, a house and lot in the city of Paris as their homestead. Said credit company alleged, further, that the $10,000 note and interest coupons, hereinbefore referred to, were for a loan made by it to Sayles and his wife, and that to procure the loan they had represented in a written application for same that, while the 180 acres had been their homestead, they had abandoned and ceased to use it as such in 1916, and that thereafterwards, and at the time said instruments were executed, said house and lot in Paris constituted their homestead. Said company alleged, further, that it relied upon the truth of said representation, otherwise it would not have made the loan, and charged that Sayles and his wife were estopped from asserting to the contrary of said representation. With reference to the claim of Sayles and his wife that the deeds of trust were invalid as to Mrs. Sayles because she did not acknowledge the execution thereof in the way required by law, said credit company alleged that she did in fact appear before the notary, and that, if his certificate as to what occurred when she appeared before him was not true, it did not know and had no reason to believe it was not true, and that Mrs. Sayles therefore was estopped from asserting to the contrary of the statements in said certificate.

The insurance company and Mrs. Kemper, in supplemental petitions filed by them, set up the matters alleged by the credit company as estoppel against Sayles and his wife, and alleged, further, as matter of estoppel, that said Sayles and his wife, by an instrument in writing, duly acknowledged, recorded in the office of the county clerk of Lamar county, had designated the house and lot referred to above as their homestead. Mrs. Kemper alleged, further, that the matters relied upon by Sayles and his wife to avoid liability, if true, could not affect the right she asserted to a recovery on the $8,500 note and a foreclosure of the trust deed made to secure it, because she was in the attitude of an innocent purchaser of the note, and the insurance

company alleged that it was in a like attitude as to the $10,000 note.

In a second supplemental petition Sayles and his wife denied the execution by them of the application for the $10,000 loan, referred to in the pleadings of the credit company and interveners as shown above, and alleged that, if their names were signed to same by any person authorized by them to sign their names at all, "same were so signed under a misapprehension of fact and under false representation made by one Forrest H. Johnson, the agent of said credit company, as to what the contents of such paper were." And said Sayles and his wife further alleged in said second supplemental petition that, if they designated said house and lot in Paris, as alleged, as their homestead, and made the representations as to an abandonment of the 180 acres as their homestead, as charged against them, they were not thereby estopped from asserting that at the time the instruments hereinbefore referred to were executed the 180 acres was a part of their homestead, because, they alleged, they were then "actually occupying, using, cultivating, and claiming the two tracts of land (being the 180 acres) in controversy in connection with said other tract (the lot described by the credit company and interveners as being in the city of Paris), above referred to, as their homestead; that is, they were using, occupying, cultivating, and claiming all three for the purpose of the business of D. S. Sayles as a farmer appropriate to the country, such as farming, and all three used for the same purpose of sustaining the family in the home; and they further say that said lot mentioned in said designation of homestead is not situated within any town, village, or city, and was used by them in connection with the two tracts of land in controversy as the homestead; and they further say that such use and occupancy and cultivation and claim of homestead of all three of said tracts was open and notorious."

After hearing the testimony, the jury, in response to special issues submitted to them, found the following to be facts: (1) At the time the instruments hereinbefore referred to were executed Daniel S. Sayles and his family were "occupying, using, or cultivating and claiming as their homestead" the two tracts of 90 acres each and the lot referred to as "in West Paris," and were "using the three tracts together for the purpose of the support of the family." (2) Forrest H. Johnson was the agent of the credit company "in the matter of making the application and in executing the papers incident to the loan" it made to Sayles. (3) At the time nor before said instruments were executed said Johnson did not inform Sayles and his wife that one of said instruments was a designation of the property referred to as "in West Paris" as their homestead. (4) Nor did said Johnson at or prior to that time inform Sayles and his wife that one of the instruments to be signed by them was a lien on the 180 acres of land to secure a note for $8,500. (5) "On the occasion of the signing" of the instruments Sayles and wife did not know "that they were authorizing their names signed to the instrument called the homestead designation." (6) Nor did they know on that occasion that "their names were being signed to an instrument giving a lien" on the 180 acres to secure the payment of the $8,500 note. (7) Said Johnson represented to Sayles that the only lien they were giving on the 180 acres was the lien securing the payment of the note for $10,000. (8) He (Johnson) also represented to Sayles that the note for $8,500 was being secured by a lien only on the Oklahoma land. (9) Sayles believed and relied upon said representations made by Johnson. (10) Mrs. Sayles did not not know "that she was appearing before the notary public for the purpose of acknowledging the execution of the instrument called the 'homestead designation.'" (11) The notary public before whom she appeared did not explain the instrument called the "homestead designation" to her. (12) Nor did he explain to her the deed of trust made to secure the $8,500 note. (13) Mrs. Sayles did not know that she was appearing before the notary public for the purpose of acknowledging the execution of the deed of trust on the 180 acres to secure the payment of the $8,500 note. (14) Said Johnson knew that the notary public did not explain either the instrument called a "homestead designation" or the deed of trust to secure the $8,500 note to Mrs. Sayles. (15) Daniel S. Sayles did not appear before the notary public for the purpose of acknowledging the execution of the instrument called the "homestead designation." (16) Nor did he appear before the notary for the purpose of acknowledging the execution of the trust deed to secure the $8,500 note. (17) The notary public did not "explain to Mrs. Sayles the instrument called deed of trust on the 180 acres securing the payment of the $10,000 note." (18) Said Johnson knew said instrument was not explained to her by the notary. (19) Sayles and his wife, when they signed the instrument called "application for loan," did not know that same contained the statement therein that the 180 acres was no part of their homestead. (20) Nor did they know that said application contained a statement that the 180 acres had been abandoned by them as a homestead. (21) Sayles did not authorize the statement to be placed in said application that the 180 acres was no part of the homestead of himself and wife, and that the said tract had been abandoned by him as a homestead. (22) Said Johnson had notice at the time the credit company made the loan to Sayles that the 180 acres was a part of Sayles' homestead. (23) At the time said loan was made Harvey Johnson also had notice that the 180 acres constituted a part of the homestead of Sayles and his family. (24)

Sayles and his family never at any time ceased "to occupy, use, cultivate, and claim" the 180 acres in connection with the lot referred to as in West Paris as their homestead; that is, they never ceased "to use, occupy, cultivate, and claim all three of said tracts as their homestead for the purpose of the business of D. S. Sayles as a farmer appropriate to the country, such as farming." (25) Sayles and his wife did not know that either of the .trust deeds they signed "contained the statement that the 180 acres was not their homestead but that their homestead was on the property referred to as in Paris, Tex." (26) Said Forrest H. Johnson knew that Sayles and his wife did not know that such a statement was in either of said trust deeds.

In response to questions propounded to them at the request of defendants and interveners, the jury found, further, that neither the Commerce Trust Company nor Mrs. Kemper was induced to purchase the $8,500 note, nor the insurance company the $10,000 note, because of representations of Sayles that the 180 acres was not, and the Paris lot was, homestead; nor was the credit company induced by such representations to lend Sayles the sum represented by the $10,000 note.

On the findings of the jury stated, and findings of his own that Daniel S. Sayles and E. Z. Sayles were husband and wife, that none of the notes were given for necessaries for Mrs. Sayles or her children, or for the improvement or preservation of her separate property, but were for indebtedness incurred by her husband, Daniel S. Sayles, in the purchase of land in the state of Oklahoma, the court rendered judgment as follows: (1) That the credit company and the interveners take nothing as against Mrs. Sayles, and in her favor for costs; (2) in favor of the insurance company against Sayles for $14,850, the amount of the $10,000 note and interest coupons; (3) in favor of Mrs. Kemper against Sayles for $12,997.19, the amount of the $8,500 note; (4) in favor of the credit company against Sayles for $2,722.50, the amount of the note for $501, and three notes for $500 each it sued on; (5) denying the prayer of the credit company and the interveners for a foreclosure of the liens asserted by them because of the trust deeds; (6) canceling said trust deeds as a cloud on the title of Sayles and his wife to the 180 acres of land. The appeal from the judgment was prosecuted by the credit company, Mrs. Kemper and her husband, the insurance company, R. A. Ritchie, and Forrest H. Johnson.

Dabney, Goggans & Richie, of Dallas, and W. F. Moore, of Paris, for appellants.

Connor & Baldwin and Edgar Wright, all of Paris, for appellees.

WILLSON, C. J. (after stating the facts as above). It appeared from testimony heard at the trial that the 180 acres of land referred to in the statement above was situated in Lamar county, about 20 miles from the city of Paris. For many years prior to September 15, 1916, appellees and their children resided upon and used said 180 acres as their homestead. On said September 15th appellees purchased a tract of about 1 acre, to which they removed, and where they thereafter resided, and were residing in October, 1919, when they executed the instruments referred to in said statement. In the deed conveying the acre tract to appellees same was described as "on the north side of Bonham street in the city of Paris," but, as a matter of fact, it was situated about 200 yards west and outside of said city as incorporated.

Whether the 180 acres had ceased to be, and the acre tract instead had become, appellees' homestead at the time they executed the trust deeds referred to in said statement, were questions in the case. If the 180 acres had not ceased to be homestead at that time, the trust deeds were void by force of section 50 of article 16 of the Constitution.

Appellants contended that the acre tract was "in a town or city" (Paris), within the meaning of section 51 of said article of the Constitution, and that, when appellees purchased and moved to it, it became, and the 180 acres ceased to be, homestead, and was not their homestead at the time they executed the trust deeds. On the other hand, appellees contended that the 180 acres never ceased to be their homestead, that the acre tract was not "in a town or city," but was in the country; and that, when they purchased and moved to it, it became a part of their rural homestead.

The court instructed the jury that the acre tract "was not in the city of Paris," and that it was not "within a town or village" within the meaning of the Constitution. After telling the jury that "the homestead of a family not in a city, town, or village shall consist of not more than 200 acres of land which may be in one or more parcels or tracts with the improvements thereon," the court instructed them further that—

"If such land or lands is not in a city, town, or village, and is composed of different tracts, then in determining whether any particular tract is the homestead or part of the homestead of the family the question is determined by the character of the use or purpose for which the tract is used. If the lands are resided upon by the family as a home, or if the same is being used or appropriated for the purpose of the support and maintenance of the family, and does not altogether exceed 200 acres, then the same would be the homestead of the family."

Appellants objected to the instructions in so far as they told the jury that the acre tract was not in the city of Paris nor within a town or village, on the ground that same was on the weight of the evidence, and complain here because the court overruled their

objection and refused a special charge they requested, which, had it been given, would have left it to the jury to determine whether said acre tract was in a city or town or not.

[1] It has been held (when the question was as to whether a homestead was urban or rural) that the fact that the land was within the limits of a town or city as incorporated did not establish conclusively that the homestead was urban, nor did the fact that it was outside such limits establish conclusively that it was rural. Lauchheimer v. Saunders, 97 Tex. 137, 76 S. W. 750; Wilder v. McConnell, 91 Tex. 600, 45 S. W. 145. Whether it is the one or the other in a given case may be a question of fact for a jury or a question of law for the court. If, quoting from the opinion of the court in Jones v. Bank (Tex. Com. App.) 259 S. W. 157, "reasonable minds could not differ as to whether it [the land] is a rural or an urban homestead, the question as to its character is a matter of law."

[2] Applying that test here, we think it appeared as a matter of law from the testimony that the acre tract was not in the city of Paris within the meaning of language used in said section 51 of the Constitution, and that the trial court, therefore, did not err when he so instructed the jury.

The testimony was that the acre tract was on the north side of Bonham street, and about 200 yards west of the west boundary line of the city of Paris as incorporated. With the exception of a dwelling house adjacent to said boundary line, there were no houses on the north side of said street between said acre tract and said boundary line, and for a mile or more on said side of said street west of said acre tract there were no houses, except a dwelling house adjoining said tract, and a little storehouse distant 150 to 200 feet from it. The only houses for a distance of a mile or more west of said boundary line on the south side of said street was a dwelling house about 300 yards west of said line, and two dwelling houses situated a short distance still farther west.

Appellants are not in the attitude of contending, it seems, that the acre tract and dwelling house thereupon and other houses near it, specified above, constituted a town or village. Their contention, as we understand it, is that the city of Paris had builded west beyond its corporate limits far enough to include the land on which said houses were situated, and that said acre tract in that way became a part of and was in the city of Paris within the meaning of the language used in said section 51 of the Constitution. But we think the existence of the open space of about 200 yards between said acre tract and said boundary line on the north side of said street, and the open space of about 300 yards between said boundary line and the nearest of the three houses on the south side

of said street, conclusively established the contrary of that contention, for, as we see it, reasonable minds considering said open spaces could reach no other conclusion than that the city of Paris had not builded any distance west of its west boundary line as incorporated.

[3] Another contention urged by appellants is that the instructions set out above were erroneous so far as they told the jury that different tracts of land, together not exceeding 200 acres, if not situated in a city, town, or village, may constitute the homestead, if they "are resided upon by the family as a home, or if the same is being used or appropriated for the purpose of the support and maintenance of the family."

The objection to the instruction was that it was on the weight of the evidence and misleading, in that it told the jury that land not in a city, town, or village, if "used or appropriated for the purpose of the support and maintenance of the family," might "constitute (quoting) the homestead or a part of the homestead, regardless of the residence of the family thereon." We are inclined to think the objection to the instruction should have been sustained (Gleed v. Pickett, 29 Tex. Civ. App. 101, 68 S. W. 192), but think the error, if it was one, in overruling it should be treated as harmless, for we think it appeared as a matter of law from the testimony that appellees never ceased to use the 180 acres for the purpose of a home, and that they were using both that and the acre tract for such purposes at the time they executed the trust deeds. The testimony referred to was that, while appellees rented part of the 180 acres to certain of their children, when they moved to the acre tract they left a large part of their household goods and kitchen furniture in rooms they reserved in the dwelling house on the 180 acres; left their houses, cows, hogs, chickens, etc., on the land; cultivated and grew crops on a part thereof every year; and kept supplies of food for themselves stored in said dwelling house, and for their live stock stored in other houses on the land. And, further, it appeared from said testimony that appellee Daniel S. Sayles actually resided upon the 180 acres during most of the time after he and his family moved to the acre tract; that his wife spent much of her time there; and that their unmarried daughter and minor son, constituting their family, passed some of their time there.

[4, 5] If the conclusion that it appeared as a matter of law that the 180 acres was a part of appellees' homestead at the time they executed the trust deeds is correct, then said deeds were invalid (section 50, art. 16, of the Constitution), and the court below did not err when he refused to give any effect to them, unless it appeared that appellees were estopped from setting up the fact that the land was homestead as against the fore-

closure sought by appellants. The contention of appellants that it so appeared is based: (1) On testimony showing that in their written application for the loan, and in the trust deeds, appellees represented as facts that, while the 180 acres had been their homestead, they had abandoned its use as such, that it was not then a part of their homestead, and that the acre tract, on which they then resided, was their homestead; and (2) on testimony showing that by an instrument in writing executed by them at the times they applied for the loan appellees designated the acre tract as their homestead, describing same by metes and bounds, and as in "Paris, Tex.," and representing that they were then "using and occupying the same (quoting) as our homestead, and that no other property constitutes any part of said homestead." The jury determined to the contrary of appellant's contention on issues submitted at their (appellants') request when they (the jury) found that the credit company did not rely on the truth of said representations and was not induced thereby to make the loan evidenced by the $10,000 note, and that the insurance company did not rely on, and was not induced by, said representations to purchase said note, and when they further found that the Commerce Trust Company and Mrs. Kemper, when they, respectively, purchased the $8,500 note, did not rely on, and were not induced by, said representations to purchase that note. Bank v. Bielharz, 94 Tex. 493, 62 S. W. 743; 2 Pomeroy's Equity, § 812, p. 1669. For anything to the contrary appearing in appellants' brief, they made no effort in the court below to have the findings just referred to set aside, and they are not attacking same here by any of the assignments in their brief. Hence we are bound to give effect to said findings. Doing so, we must affirm the judgment, for, if the 180 acres was homestead, as we have determined it was, and if appellees were not estopped from so asserting as against the foreclosure sought by appellants, as determined by the jury, the judgment is not erroneous.

In that view of the case it is not necessary to decide other questions presented by assignments in the record.

The judgment is affirmed.