### COMMERCE FARM CREDIT. CO. et al. v. SALES et ux. (No. 869–4616.)

(Commission of Appeals of Texas, Section A. Nov. 24, 1926.)

**1. Homestead ☞57½—Whether homestead lot was within limits of city in contemplation of Constitution held for jury (Const. art. 16, § 51).**

Whether city had grown along certain street until it had extended its limits to include lot, claimed as homestead, 200 yards outside corporate limits, within contemplation of Const. art. 16, § 51, *held* for jury.

**2. Homestead ☞63—Although place of homestead gives its character as urban or rural, use made of land in close proximity is material in determining question.**

Although it is the place of homestead which gives it its character in respect to whether it is urban or rural, in determining whether it is urban or rural, use made of land in close proximity to it as well as use of homestead itself becomes material.

**3. Homestead ☞57½—That there was vacant space of 200 yards between lot and corporate limits of city was not conclusive as matter of law that homestead lot was rural.**

That there was vacant space of 200 yards between lot claimed as homestead and corporate limits of city *held* not conclusive as matter of law that homestead was rural and not urban.

**4. Homestead ☞63—One owning farm and residing on urban lot cannot claim both lot and farm as homestead.**

Where plaintiff owned 180-acre farm, and resided on lot near city, if lot was found to be urban, he could not claim both lot and land as homestead.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by Daniel S. Sales and wife against the Commerce Farm Credit Company and others. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (279 S. W. 567), and defendants bring error. Reversed and remanded.

Dabney, Goggans & Ritchie, of Dallas, and W. F. Moore, of Paris, for plaintiffs in error.

Connor & Baldwin and Edgar Wright, all of Paris, for defendants in error.

BISHOP, J. Defendants in error, Daniel S. Sales and wife, instituted this suit in the district court of Lamar county, seeking cancellation of deeds of trust executed by them on October 28, 1919, on 180 acres of land situated in said county, to secure indebtedness evidenced by their notes, alleging that the deeds of trust were void, for the reason that the land was part of their homestead, at the time they were executed. Plaintiffs in error resisted the suit to cancel, insisting that the

═══════════

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

land was not the homestead of Sales and wife as claimed, and sought judgment for the indebtedness and foreclosure of the lien.

Trial before a jury resulted in judgment canceling the deeds of trust and denying foreclosure of lien. On trial, plaintiffs in error contended that, at the time of the execution of the deeds of trust, the homestead of Sales and wife was urban and not rural, and consisted of a lot of about one acre, together with their residence and other improvements thereon, situated in the city of Paris, Tex. The court instructed the jury that the tract of one acre on which Sales and wife resided at the time they executed the deeds of trust was not in the city of Paris, and was not in a city, town, or village in contemplation of article 16, § 51, of our Constitution. Plaintiffs in error objected to this charge on the ground that it was on the weight of the evidence, and requested a special charge presenting for the determination of the jury the issue as to whether said acre tract was a lot in a city, town, or village, and this requested special charge was by the court refused.

The charge to which objection was made, and refusal to give the charge requested, was on appeal assigned as error, and the Court of Civil Appeals affirmed the judgment, holding (a) that "it appeared as a matter of law from the testimony that the acre tract was not in the city of Paris within the meaning of language used in said section 51 of the Constitution, and that the trial court, therefore, did not err when he so instructed the jury"; and (b) that "it appeared as a matter of law from the testimony that appellees [defendants in error] never ceased to use the 180 acres for the purpose of a home, and that they were using both that and the acre tract for such purposes at the time they executed the trust deeds," and for this reason both constituted their rural homestead. 279 S. W. 567. On these holdings error is here assigned.

The 180 acres of land is situated in Lamar county, about 20 miles from the city of Paris. Sales and wife lived on and occupied this land as their rural homestead for many years prior to September 15, 1916. On this date they purchased the acre tract to which they moved and on which they were residing when they executed the deeds of trust involved in this suit. The deed conveying the acre tract to them described same as a lot on the north side of Bonham street, known as the Boulevard, in the city of Paris, with a frontage of 85 feet east and west along said street, and extending north 400 feet more or less to a designated line. This lot, however, is not within the corporate limits of the city of Paris, but is situated 200 yards west of the west boundary line of said corporate limits. First street extends north and south along this west boundary line. Bonham street (the Boulevard) crosses First street and extends west of the lot of Sales and wife, with houses situated on the north and south side of it as shown by the following plat:

T. N. White, a witness, testified:

"I was living on Second street in West Paris in 1916 at the time Mr. Sales bought that place from Mr. Hogue. I was living this side of the city limits, two houses this side of the city limits, and his house was about 200 yards outside of the city limits; my house was two blocks inside the city limits and his house was 200 yards, not feet, outside the city limits. In the latter part of 1916, in September, 1916, the first street east of the Sales place was First street; there was no street on the other side of West Paris east of his house. There was a house just west of Mr. Sales, on the same side of the road. Roy Brann built a house just west of Mr. Sales. Mr. Brann had just about an acre lot there; none of it was in cultivation except a garden; and he had a five-roomed house and a barn on the lot. West of Mr. Brann's there was nothing but black-jack brush and red oak timber. That condition continued for about 2 miles west of Mr. Brann's, out on the Ocean highway, or the Boulevard, before you got to another house or any cultivated land. There was no house opposite Mr. Sales' house, on the south side of the Boulevard, until you got about 100 yards west. Then you came to a place that Zack Rice, the mail carrier, built, he had 5 acres there. He had a residence on it and set an orchard out. Adjoining that on the west there

was nothing but timber for a mile and half or 2 miles. On October 28 or October 30, 1919, there were no houses on the north side of the Boulevard east of Mr. Sales, between his place and the city limits, only Mr. Hodge had built a place on First street—Carl Hodge. His place was on the west side of the street, the west side of First street and on the north side of the Boulevard. Carl Hodge's place was just outside the corporate limits of the city of Paris. First street is the line; that is as far as the pavement went. There was no house between the Hodge house and the Sales house. If there was a road or street going north between Brann's home and the Sales house in 1919 I never traveled it and had never noticed it. I don't remember whether there was a house right west of Brann's house in 1919 or not; there was a little store put there 4 or 5 years ago. I believe the little store was there in 1919, that would have been 5 years ago; I believe the store was there then. I guess the little store is a 150 or 200 yards west of the Sales house. Beyond the store west Mrs. Wortham built a house kinder at the foot of the hill, it was there in 1919, I think Mrs. Wortham moved there about that time, about 1919. Beyond that west there was nothing but the timber. Opposite Mr. Sales' house, on the south side of the Boulevard, I think Mr. Emmett Dement built a house in 1919 or 1920. I am not sure whether that house was there in 1919 or not; I know it was there right about that time. That house was not immediately opposite Mr. Sales; it was further west about 100 yards. * * *

"Starting right at the city limits, Carl Hodge owns the first house west of the city limits; it was built there about 25 years ago, maybe 26. A fellow called Brann lives west of that house; then comes the McCormick house—he is the man who is renting the Sales house— then there is a house owned by a man named Morris; then the little store. The man named Morris who lives out there is a conductor on a motor car; he works in town. Dr. Edwards, the specialist, lives out there or did live out there; he does not now. Carl Hodge lives in the house he owns.

"On the 30th day of October, 1919, when the deeds of trust were signed, Dement had a house on the south side of the Boulevard and Zach Rice had another. Rice's place is west of the Dement place, and they are both west of the Sayles place. Then a man named Cruze has a residence west of Rice. Cruze is a barber, Dement a carpenter and contractor. The first place is the Dement place; then next west is Zach Rice's place; then next west is the Cruze place. That is the last one going west."

Mrs. Sales testified:

"We moved to Paris about October, 1916, somewhere along there. Our land lies near Sulphur, southwest of Harmon, in this county. I believe they call it between 20 and 25 miles from Paris, the county seat of Lamar county, to this 180 acres of land; it is something like that. We were living in Paris when these documents were signed at our house out there, in October, 1919; I guess so, I don't remember the exact date, whether they are dated October 30th or not, but I do remember it was in the fall of the year. Mr. Sales, Reaves and Minnie (son and daughter), were living at the place out there we got from Mr. Hogue at that time

on October 30, 1919, if the instruments are dated correctly."

Minnie Sales testified:

"The house in West Paris was lighted with electricity, and we had city water, we did not have gas; we had electric lights and city water. It was a comfortable home place, with every convenience and well fitted up. The house had a front and side gallery to it. The galleries ran across the south and east side. It fronted south and had a side gallery. I do not know whether the lot had a frontage of 85 feet or not. I know it was very much narrower in front than it was deep. The only other improvement on the place was a barn. We had a barn in which we kept the cow. My father had an automobile while we lived there."

In the case of Jones v. First National Bank (Tex. Com. App.) 259 S. W. 157, we say:

"A city, town, or village, even when incorporated, may grow until it has extended beyond its corporate limits, and property located outside such limits may constitute an urban homestead and be in the city, town, or village, within the meaning of the Constitution."

[1, 2] Here there is testimony which would warrant a finding that the city of Paris had grown along Bonham street until it had extended its limits in contemplation of article 16, § 51, of our Constitution to include the lot on which the residence of Sales and wife was situated at the time the deeds of trust were executed. Those persons having their homes on this street were engaged in occupations of urban character. And while the occupation in which they were engaged does not conclusively establish the character of their homesteads, the proximity of their homes to each other, and to the corporate limits of the city, together with the use to which the land on which their homes were established was put, should be considered in determining whether they had made their homes in the country, or whether Sales and wife, though engaged in farming, were living in the city. While it is the place of the homestead that gives it its character in respect as to whether it is urban or rural, in determining whether it is in the country or in a city, town, or village, the use made of the land in close proximity to it becomes material.

[3] The testimony found in the record, explaining that the water pipe through which the city of Paris received its water supply was near the property of Sales and wife and their neighbors, and for this reason they were allowed the use of city water, is in its nature rebuttal, and could be considered by the jury, in connection with all other facts in evidence, in determining whether the lot was in the city of Paris within the meaning of the Constitution. When considered in connection with other facts in evidence, this testimony may or may not be sufficient to explain the use of city water in a country home. Nor is

the fact that there was a vacant space of 200 yards between this lot and the corporate limits of the city, as a matter of law, conclusive on this issue, as was held by the Court of Civil Appeals. We think reasonable minds may differ as to whether this was an urban residence or a country home.

[4] Should it be determined that this lot or acre tract at the time of the execution of the deeds of trust was in the city, and a homestead established thereon urban, Sales and wife could not claim both the lot and the 180 acres of land as their homestead.

The charge was on the weight of the evidence, and the Court of Civil Appeals erred in its holding sustaining it. We therefore recommend that the judgments of both courts be reversed, and the cause remanded to the district court.

CURETON, C: J. Judgments of the Court of Civil Appeals and district court both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals. We approve the holding of the Commission of Appeals on the questions discussed in its opinion.

Associate Justice PIERSON, not sitting.