RANDALL, Circuit Judge:
 

 This direct appeal from the judgment of a bankruptcy court in a joint proceeding under the Bankruptcy Code raises two issues: first, the debtors challenge the bankruptcy court’s refusal to allow one spouse to claim exemptions under federal law when the other spouse claims exemptions under Texas law; second, the trustee challenges the bankruptcy court’s characterization of the debtors’ business as part of the urban homestead under Texas law. We reverse the bankruptcy court’s decision denying one spouse the right to claim federal exemptions, and we affirm the court’s decision including the debtors’ business location within the urban homestead.
 

 I.
 

 Milton and Corinne N. Cannady, husband and wife, filed a joint petition for bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701
 
 et seq.
 
 (Supp. III 1979), on October 25, 1979 in the United States Bankruptcy Court for the Northern District of Texas. In their joint petition each of the Cannadys claimed certain property as exempt, with Mr. Cannady claiming exemptions under Texas law and Mrs. Can-nady claiming exemptions under federal law. In the first place, Mr. Cannady asserted an urban homestead exemption for both residential and business locations; relying on Tex.Rev.Civ.Stat.Ann. art. 3833(a)(3) (Vernon 1980 Supp.),
 
 [1]
 
 he claimed a residence located in Lubbock, Texas and a business located just outside the Lubbock city limits. In the second place, Mr. and Mrs. Cannady both asserted exemptions for certain items of personal property which they estimated had a total value of $24,113.
 
 [2]
 
 
 *212
 
 Although the Cannadys claimed exemptions in the same personal property, however, they looked to different sources for their rights: Mr. Cannady relied on Tex.Rev.Civ.Stat.Ann. art. 3836(a) (Vernon 1980 Supp.),
 
 [3]
 
 while Mrs. Cannady relied on section 522(b)(1) and (d) of the Bankruptcy Code, 11 U.S.C. § 522(b)(1) and (d) (Supp. III 1979).
 
 [4]
 

 The Cannadys’ separate claims of state and federal exemptions were based on two provisions in the Bankruptcy Code’s exemption section. First, section 522(b), see note 4
 
 supra,
 
 gives an individual debtor a choice between two different sets of exemptions: those provided by the Bankruptcy Code, which are set forth in section 522(d), and those provided by applicable state and federal nonbankruptcy law, in this case the law of Texas as set forth in Tex.Rev.Civ.Stat. Ann. arts. 3833-59. Second, section 522(m) states that the exemption provisions of the Code “shall apply separately with respect to each debtor in a joint case.” As the House Report on the Bankruptcy Reform Act of 1978 explains, this provision means that each debtor in a joint case “is entitled to the Federal exemptions provided [in section 522] or to the State exemptions, whichever the debtor chooses.” H.R.Rep.No. 95-595, 95th Cong., 1st Sess. 363 (1977),
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News 5963, 6319. Applying section 522 separately, Mr. Cannady has chosen to assert the state exemptions while Mrs. Cannady has chosen to assert the federal exemptions.
 

 The bankruptcy court allowed Mr. Canna-dy’s claimed homestead exemption in full, but denied the Cannadys’ claimed personal property exemptions pending receipt of an amended statement of exempt property in accordance with its decision.
 
 [5]
 
 The court
 
 *213
 
 recognized that pursuant to section 522(m) one spouse generally may claim the federal exemptions while the other spouse claims the applicable state exemptions. However, the court found decisive the fact that Mr. Cannady had claimed the personal property exemptions allowed to a
 
 family
 
 under Texas law; while his claim to an urban homestead would have been no less had he been single and not a member of a family, his claim to a personal property exemption in such circumstances would have been limited to $15,000 (versus $30,000 for a family). The court reasoned that as part of the family Mrs. Cannady benefited from the higher amount of the family exemption allowed under state law, and therefore could not also claim a federal exemption.
 

 We agree with the bankruptcy court that something of a windfall is allowed the debt- or who claims federal exemptions under the Bankruptcy Code despite his or her spouse’s claim of a family exemption under state law. In such a case the spouse who claims the federal exemption is receiving the benefits of both federal
 
 and
 
 state exemptions, for he or she receives the federal exemptions without diminishing his or her family’s claims under state law.
 

 However, the legislative history of the Bankruptcy Reform Act of 1978 indicates that the Congress was aware that certain windfalls might result from the separate application of exemption provisions in joint bankruptcy proceedings, yet did nothing to change section 522(m). As the Senate Report noted in its discussion of the proposed act;
 

 H.R. 8200, the House version of this bill, contains a provision for exemptions that would allow the debtor to choose between State law or Federal exemptions as set by the bill, whichever is higher. H.R. 8200 would establish 11 categories of property for the Federal exemption, among which is a homestead exemption of $10,000. Such a provision in joint cases would result in a husband choosing State exemptions while a wife might choose Federal exemptions. Together, they could thus retain after bankruptcy, very substantial amounts of property, while their debts would have been discharged. The committee feels that the policy of the bankruptcy law is to provide a fresh start, but not instant affluence, as would be possible under the provisions of H.R. 8200.
 

 S.Rep.No. 95-989, 95th Cong., 2nd Sess. 6 (1978),
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News 5787, 5792. Despite this expression of concern, the Congress made no change in the House version of section 522(m). The Senate settled instead for a compromise on two other parts of the Bankruptcy Code’s exemption provision: first, the dollar amounts of the exemptions allowed in section 522(d) were lowered; and second, section 522(b)(1),
 
 see
 
 note 4
 
 supra,
 
 was amended to allow the individual states by specific legislation to deny their residents the right to claim the federal exemptions under section 522(d).
 
 See
 
 124 Cong. Rec. H11,095 (daily ed. Sep. 28, 1978); 124 Cong.Rec. S17,412 (daily ed. Oct. 6, 1978).
 

 In the context of this legislative history we decline to read section 522(m) as did the bankruptcy court, i. e., to deny one spouse the right to choose federal exemptions when the other spouse claims a family exemption under state law. Although in some cases the debtors in a joint bankrupt
 
 *214
 
 cy case may thereby achieve “instant affluence” rather than just “a fresh start,” we think it clear that the Congress contemplated that possibility. The Congress did nothing to prevent such a result, but instead delegated to the states the authority to prevent it by appropriate state legislation. In short, the legislative history behind section 522 demonstrates that the Congress intended to allow each debtor in a joint case to choose the federal exemptions regardless of his or her spouse’s choice of a family exemption under state law — unless and until the applicable state law precludes such a result.
 
 See In re Carstens,
 
 8 B.R. 524, 527 (Bkrtcy.N.D.Iowa 1981);
 
 In re
 
 Brosius, 7 B.R. 811, 813-14 (Brktcy.C.D.Cal.1980);
 
 In re Ancira,
 
 5 B.R. 673, 674-75 (Bkrtcy.N.D.Cal.1980). Since Texas has not yet enacted legislation to restrict a debtor’s right to choose federal exemptions in such circumstances, we conclude that Mrs. Cannady may claim federal exemptions under section 522(d) of the Bankruptcy Code despite Mr. Cannady’s choice of state exemptions under Tex.Rev.Civ.Stat.Ann. arts. 3833(a)(3) and 3836(a).
 

 Our conclusion might be different had the applicable state law required Mrs. Cannady to join her husband in choosing to assert a family exemption, for in that event Mrs. Cannady would herself have chosen to claim both state and federal exemptions. This situation arose under Arizona law in
 
 In re Ageton,
 
 5 B.R. 323 (Bkrtcy.D.Ariz.1980). Under Arizona law both spouses must join in making any homestead claim as to community or joint property, and this fact led the bankruptcy court to deny a separate federal exemption claimed by the wife:
 

 Upon her joining in the homestead exemptions under the State statute, [the ■wife] may not then claim a separate federal exemption. Section 522(m) does not state that one spouse is entitled to claim both a state and federal exemption.
 

 5 B.R. at 325. We agree that section 522(m) does not contemplate the selection by one spouse of both state and federal exemptions. However, Texas law does not require both spouses to join in the designation of property sought to be exempted. Only one spouse — the “head of the family” —need act to designate personal property as exempt. Tex.Rev.Civ.Stat.Ann. art. 3859 (Vernon 1966). The bankruptcy court suggested that Mrs. Cannady might have “renounce[d] the family exemptions” insofar as they related to her ownership of an undivided interest in property claimed by Mr. Can-nady as exempt, but the court cited no authority for this proposition and we have found no support for it in Texas law. Indeed, Mr. Cannady could have claimed the full family exemption for personal property even had he not been married at the time of his bankruptcy, for Mr. Cannady’s support of his children is sufficient to constitute a “family” under Texas law.
 
 E. g., Whitehead v. Nickelson,
 
 48 Tex. 517, 528 (1878). Where the husband is free to claim a state family exemption without his wife’s consent (and, assuming some other family relationship, even if not married at the time of his bankruptcy), surely the wife cannot be said to have “chosen” the state exemptions. While she may of course benefit from her husband’s decision to claim state exemptions, she has not herself asserted any state exemption and therefore is free to claim the benefits of section 522(d) of the Bankruptcy Code.
 
 See In re Brosius,
 
 7 B.R. 811, 813 (Bkrtcy.C.D.Cal.1980);
 
 In re Ancira,
 
 5 B.R. 673, 673-74 (Bkrtcy.N.D.Cal.1980).
 

 II.
 

 The trustee cross-appeals to challenge the bankruptcy court’s designation of the Can-nadys’ place of business as part of the “urban homestead” exempted under Tex.Rev. Civ.Stat.Ann. art. 3833(a)(3),
 
 supra
 
 at note 1. Citing no authority, the trustee points only to a number of individual facts which he contends demonstrate that the business “was not an extension of the urban homestead.” In particular, the trustee notes that the business is located almost two miles outside the Lubbock city limits in an area of spotted development; that the lot is described by metes and bounds and is not subdivided or platted; that the lot has no street address and receives no city services; and that the lot is not liable for Lubbock city or school taxes.
 

 
 *215
 
 The trustee’s argument seems to center on the location of the business outside the Lubbock city limits. As the bankruptcy court recognized, however, municipal boundary lines are not decisive. In fact, Texas courts have held that city boundaries “are unimportant considerations in determining the location of or the right to claim the urban homestead . . . . ”
 
 Vistron Corp. v. Winstead,
 
 521 S.W.2d 754, 755 (Tex.Civ.App.—Eastland 1975, no writ),
 
 quoting Purdy v. Grove,
 
 35 S.W.2d 1078, 1082 (Tex.Civ.App.—Eastland 1931, writ ref’d). The test is not whether the debtor’s business and residential lots are within the bounds of a single municipality, but is instead whether “the parts of the one homestead are in the same urban community.”
 
 Id. See Jones v. First National Bank of McAllen,
 
 259 S.W. 157, 161-62 (Tex.Com.App.1924, judgment adopted);
 
 Schultz v. Schultz,
 
 45 S.W.2d 312, 313 (Tex.Civ.App.—Austin 1931, no writ);
 
 Commerce Farm Credit Co. v. Sayles,
 
 279 S.W. 567, 571 (Tex.Civ.App.—Texarkana 1926),
 
 reversed on other grounds,
 
 288 S.W. 802 (Tex.Com.App.1926, holding approved).
 

 Whether a business is within “the same urban community” as the debtor’s residence is a question of fact; so long as reasonable minds may differ, the issue is left to the judge or jury as trier of facts.
 
 See Jones v. First National Bank of McAllen, supra,
 
 at 160;
 
 Schultz
 
 v.
 
 Schultz, supra,
 
 at 317;
 
 Commerce Farm Credit Co. v. Sayles, supra,
 
 at 571. In this case the judge’s conclusion is well supported by the evidence. Although a number of factors point to the rural character of the Cannadys’ business location, the judge cited a number of factors which point to the urban character of the location: the lot is located on a road which is an extension of a major street in Lubbock, and the postal address is designated as Lubbock, Texas; the area is developed with businesses similar to that owned by the Cannadys, and includes residential subdivisions similar to those located within the city; and the City of Lubbock must pass upon all plats of subdivisions within five miles of the city limits. In short, the evidence in this case points to both a rural and an urban characterization of the Cannadys’ business location. The bankruptcy court weighed this conflicting evidence and concluded that the location was best included within the same urban community as the residence. Since we cannot say that this conclusion is clearly erroneous, we must accept the finding of the bankruptcy court.
 
 See
 
 Bankruptcy Rule 810.
 

 III.
 

 We reverse the judgment of the bankruptcy court insofar as it denies Mrs. Can-nady the right separately to claim federal exemptions while Mr. Cannady claims state exemptions. We affirm the decision of the bankruptcy court to include the Cannadys’ business location within the urban homestead. We remand this case to the bankruptcy court for proceedings consistent with this opinion.
 

 REVERSED IN PART, AFFIRMED IN PART and REMANDED.
 

 [1]
 

 . Tex.Rev.Civ.Stat.Ann. art. 3833 (Vernon 1980 Supp.) provides in pertinent part as follows:
 

 (a) If it is used for the purposes of a home, or as a place to exercise the calling or business to provide for a family or a single, adult person, not a constituent of a family, the homestead of a family or a single, adult person, not a constituent of a family, shall consist of:
 

 (3) for a family or a single, adult person, not a constituent of a family, a lot or lots, not to exceed in value ten thousand dollars at the time of their designation as a homestead, without reference to the value of any improvements thereon, if in a city, town, or village.
 

 [2]
 

 . Since the state family exemption (claimed by Mr. Cannady) alone exempts up to $30,000 in personal property,
 
 see
 
 note 3 infra, it is unclear
 
 *212
 
 why it was necessary for Mrs. Cannady to assert the federal exemptions in order to protect the roughly $24,000 worth of personal property which the two of them claimed. We do note, however, that some of the specific items claimed by the Cannadys do not appear to fit within the state exemption but would nevertheless be exemptable under federal law (e.
 
 g.,
 
 a third firearm and some items of jewelry).
 

 [3]
 

 . Tex.Rev.Civ.Stat.Ann. art. 3836(a) (Vernon 1980 Supp.) provides in pertinent part as follows:
 

 Personal property (not to exceed an aggregate fair market value of $15,000 for each single, adult person, not a constituent of a family, or $30,000 for a family) is exempt from attachment, execution and every type of seizure for the satisfaction of liabilities, except for encumbrances properly fixed thereon, if included among the following: [a list of specific types of personal property follows]
 

 [4]
 

 . Section 522(b) of the Bankruptcy Code, 11 U.S.C. § 522(b) (1979 Supp.), provides in full as follows:
 

 (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—
 

 (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
 

 (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor’s domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and
 

 (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.
 

 Section 522(d) lists the specific categories of exemptions allowed by the Bankruptcy Code.
 

 [5]
 

 .The court’s decision was based on an objection which the Cannadys assert was not timely made by the trustee. However, neither of the rules relied upon by the Cannadys for this contention was in force at any relevant time during these proceedings.
 

 First, the Cannadys point to Bankruptcy Rule 403(b), which requires the trustee to file his objections “no later than 15 days after the trustee qualifies;” in this case the trustee qualified on November 8, 1979 but filed no objections until February 7, 1980 — well beyond the fifteen day limit. However, Rule 403(b) has been superceded by the Bankruptcy Code, as the report required by that Rule has been abolished by the Code.
 
 See
 
 3 Collier on Bankruptcy ¶ 522.02 at 522-12 (15th ed. 1980). This case is governed by the Bankruptcy Code since it was filed after October 1, 1979. Bankruptcy Reform Act of 1978, Pub.L. 95-598, § 403(a), 92 Stat. 2683 (1978).
 

 
 *213
 
 Second, the Cannadys point to Rule 4005 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas. Local Rule 4005 requires the trustee to file any objection to the debtor’s claim of exemptions within fifteen days either of the first date set for the meeting of creditors or of notice to the trustee (as required by the Rule) that the exemption is claimed. The Can-nadys note that the creditor’s meeting was held on December 4, 1979 and that the trustee’s objections were filed more than fifteen days after this date, but they do not state if or when the trustee was notified in accordance with Local Rule 4005. Even if we assume that the trustee did not timely file his objections under this rule, however, we still could not grant the Cannadys relief on this ground, for the local bankruptcy rules now in force for the Northern District of Texas did not become effective until April 1, 1981 — well after the filing of the Can-nadys’ petition in bankruptcy and the objections of the trustee. Local Rule 4005, like Bankruptcy Rule 403(b), simply was not in effect during the relevant bankruptcy court proceedings.