**In re Glenn Armond PORTER and Vicki Lynn Porter, Debtors.**

**David R. LANGSTON, Trustee, Plaintiff,**

**v.**

**Herman A. PORTER, Defendant.**

Bankruptcy No. 582–00194.

Adv. No. 583–0137.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

May 8, 1984.

David R. Langston, Lubbock, Tex., for plaintiff.

Dennis O. Olson, Lubbock, Tex., for defendant.

### MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

David R. Langston, Trustee, challenges prepetition transfers from the debtor, Glenn Armond Porter, to his father as being preferential within the meaning of § 547(b) of the Code. The following summary constitutes findings of fact and conclusions of law.

Debtor, Glen Armond Porter, at all relevant times prior to bankruptcy, was co-owner of Downhill Racer, a ski shop. That business closed several months prior to the filing by the Porters of their individual petition. For several months prior to the closing of Downhill Racer, and extending into the gap period between that closing and the filing of the bankruptcy petition, debtors depended to an extent on loans from Herman Porter, the father of Glenn Armond Porter, to make house payments, car payments, and other living expenses.

In late January 1982 debtors were in substantial need of money. Glenn Armond Porter owned a couple of diamond rings which he tried to sell. When the purchase offers fell short of debtor's notion as to the value of those rings his father offered to "buy" the rings and a watch by making payments of certain living expenses of the debtors. At that time debtors were already indebted to Herman Porter for payments made by him of their living expenses in 1980 and 1981, totalling $809.23. In exchange for the rings and watch, Herman

Porter essentially gave his son, Glenn Armond Porter, a line of credit of $3,700.00, representing the value [1] to which Glenn Porter and Herman Porter had agreed for the rings and the watch, because in the ensuing period prior to bankruptcy Herman Porter made additional payments of house mortgage, car liens, and other living expenses of $2,935.69. When the pre-existing loans from Herman Porter to his son and daughter-in-law were considered the total debt to Herman Porter was $3,744.82.

The rings and watch were physically delivered by debtor to Herman Porter in January 1982. However, on October 28, 1982, only two weeks before the bankruptcy petition was filed on November 8, 1982, Glenn Armond Porter executed and delivered a bill of sale to those rings and the watch to his father. The trustee posits that the physical transfer of the rings and watch and the execution and delivery of the bill of sale each constitutes an avoidable transfer.

■ It is clear that execution of the bill of sale occurred within ninety days of the bankruptcy petition. However, I attach no real significance to the execution and delivery of the bill of sale. It served only to memorialize the earlier transfer of the jewelry from Glenn Armond Porter to his father, because the rings and the watch were actually delivered by Porter to his father in January 1982. That was a date within one year of bankruptcy which also is a prohibited period where, as here, transactions between insiders [2] are concerned. On the date in January 1982 when those rings and the watch were actually transferred by Porter to his father he was indebted to his father in the sum of $809.23 on an antecedent debt. As far as those monies are concerned the transfer was preferential within the meaning of § 547(b). Unless debtors can demonstrate their entitlement to claim recovered monies as exempt property that sum of $809.23 should be recov-

ered from Herman A. Porter. However the elements of neither a fraudulent transfer nor a preference exist for those monies advanced to or on behalf of the debtors after the rings and the watch were delivered to Herman Porter.

■ The second transaction between the parties which trustee challenged is concerned with the sale and transfer by Glenn Armond Porter to his father, Herman A. Porter, of a 1980 Yamaha Motorcycle for the sum of $1,000.00. On October 28, 1982, debtor had determined to file petition in bankruptcy and had agreed to pay a retainer of $1,000.00 to his attorneys. He did not have the money for the attorney's fees. He sold the motorcycle to his father on that date for $1,000.00 and immediately paid those monies over to the attorney. The amount paid by Herman A. Porter for the Yamaha Motorcycle represented its fair market value on that date, the transfer was intended by debtor and Herman A. Porter to be a contemporaneous exchange for new value given to debtor, and it was in fact a substantially contemporaneous exchange. I perceive that transfer to be neither fraudulent nor preferential and as far as the motorcycle is concerned the action by the trustee is denied.

The remaining issue is concerned with debtors' contention that they have not exhausted their "spillover" or "wild card" exemptions under § 522(d)(5) and that they may claim as exempt property any monies recovered or to be recovered by the trustee against Herman A. Porter. In this case I have concluded that the trustee should recover the sum of $809.23 from Herman A. Porter. The debtors, stacking their exemptions as permitted by § 522(m),[3] have not used all of the "wild card" or "spillover" permitted by § 522(d)(5). If debtors properly may claim as exempt property monies recovered by the trustee's use of his avoid-

---

1. There is no evidence in the record which reflects that the sum of $3,700.00 reasonably did not represent the fair value of the two rings and the watch.

2. § 101(25)(A)(i) defines "insider" as including a relative of the debtor if, as here, the debtor is an individual.

3. *See In re Cannady*, 653 F.2d 210 (5th Cir.1981).

ing powers their unused "wild card" under § 522(d)(5) far exceeds $809.23.

Section 522(g) gives to the debtors the qualified right to exempt property recovered by the trustee as a result of the trustee's use of his avoiding powers. The qualification which is particularly relevant to the issue before the Court is that the transfer which the trustee attacked must not be a voluntary transfer of property by the debtor. *See* § 522(g)(1)(A). The meaning of "voluntary transfer" is not defined in the Code. However a persuasive definition of that term is contained in *In re Reaves*, 8 B.R. 177, 181 (Bkrtcy.D.S.D. 1981), wherein the court stated:

> "For purposes of this decision, this bankruptcy court holds that an 11 U.S.C. § 522(g)(1)(A) voluntary transfer occurs when a debtor, with knowledge of all essential facts and free from the persuasive influence of another, chooses of her own free will to transfer property to the creditor. A voluntary transfer does not occur where a creditor has harassed, insulted, and shamed a debtor in transferring the property to the creditor. Nor has a voluntary transfer occurred where a creditor has concealed or failed to inform a debtor of essential facts necessary for the debtor to make an intelligent decision on whether to transfer the property to the creditor. This is especially true where a debtor can show that she would not have made the transfer had she been informed of all the essential facts."

I have found above that the transfer of January 1982 was fraudulently made only to the extent of $809.23, the amount of the antecedent debt then owing by the debtors to Herman A. Porter. That transfer in January 1982 contained none of the incidences of "involuntariness." In fact, any argument that the transfer was other than voluntary is spurious.

Therefore, I conclude that the trustee, by using his avoiding powers, should recover the sum of $809.23 from Herman A. Porter.

I further conclude that those recovered monies may not be exempted by the debtors.

It is, therefore, ORDERED by the Court that David R. Langston, Trustee, do have and recover of and from Herman A. Porter the sum of $809.23 with interest thereon from date at the rate of 10.81%, the Coupon Yield Equivalent.

LET JUDGMENT BE ENTERED ACCORDINGLY.