**In re Charles Theron HINSHAW, Jr., Debtor.**

**James R. BARR, Trustee, Plaintiff,**

v.

**Charles Theron HINSHAW, Jr., Defendant.**

**Bankruptcy No. 80–11984.**

United States Bankruptcy Court, D. Kansas.

Sept. 27, 1982.

Gerald Haag, Wichita, Kan., for debtor/defendant Charles Theron Hinshaw, Jr.

James R. Barr, Wichita, Kan., plaintiff/trustee.

Richard Benjes, Hutchinson, Kan., for Hutchinson Nat. Bank, trustee of the pension and profit-sharing plans.

Sharon Werner, Wichita, Kan., for Small Business Admin., Kansas City.

MEMORANDUM AND ORDER SUSTAINING DEBTOR'S CLAIMED EXEMPTION UNDER 11 U.S.C. § 522(b)(2)(A)

ROBERT B. MORTON, Bankruptcy Judge.

NATURE AND FACTS OF THE CASE

Debtor/defendant Charles Hinshaw, Jr. is a medical doctor who was employed by Lettner-Hinshaw, P.A. and Lettner-Hinshaw Laboratories, Inc. Hinshaw participated in two plans adopted by these corporations, the Lettner-Hinshaw, P.A. and Lettner-Hinshaw Laboratories, Inc. Employees' Pension Plan and Trust and the Lettner-Hinshaw, P.A. and Lettner-Hinshaw Laboratories, Inc. Employees' Profit-Sharing Plan and Trust. The parties have agreed that both plans, still in effect, are qualified plans under 26 U.S.C. § 401.[1]

As of October 31, 1980, the professional association and the laboratories corporation had contributed $82,118.92 to the profit-sharing plan and $68,714.11 to the pension plan. On December 24, 1980, Hinshaw directed the trustee to purchase two life insurance policies with a portion of these funds.[2] From the profit-sharing plan funds, the trustee purchased Policy

---

1. *See* Court's Letter to Counsel, filed May 21, 1982.

2. Under the terms of both plans, the trustee may purchase life insurance or annuity con-

tracts in an amount not to exceed fifty per cent of the contribution allocated to the participant's contribution account. Profit-Sharing Plan, at 21; Pension Plan, at 52.

# 169930–02M from E. F. Hutton Life Insurance Co. for $41,000. A second policy, # 169330–01M, was purchased from E. F. Hutton with $34,000 from the pension plan funds. The balances remaining in the profit-sharing and pension plan funds are $41,118.92 and $34,714.11, respectively. On December 24, 1980, the debtor filed a voluntary petition for Chapter 7 relief.

The debtor has claimed exemptions for the profit-sharing and pension plan funds as well as for the two life insurance policies. On June 29, 1982, this court entered an order overruling trustee's objection to the exemption of the life insurance policies. Thus the focus of the instant inquiry is on the question of debtor's entitlement to an exemption of the profit-sharing and pension plan funds over the objection of the trustee. More specifically, the issue to be decided is whether the prohibitions against assignment and alienation found in these tax-qualified ERISA plans provide a federal exemption under 11 U.S.C. § 522(b)(2)(A) available to the debtor.

## MEMORANDUM

The debtor has not raised the issue of whether the ERISA funds are property of the estate under 11 U.S.C. § 541. Many of the decisions concerning pension plans center on this point. Under section 70a of the Bankruptcy Act [3], pension plan funds were viewed as a wage substitute for some future period and, therefore, were not included within the property of the estate. *In re Turpin,* 644 F.2d 472 (5th Cir. 1981); *In re Parker,* 473 F.Supp. 746 (W.D.N.Y.1979). Plans from which the debtor had an unrestricted right to withdraw funds prior to retirement were the exception to the rule and were included within the property of the estate. See *In re Witlin,* 640 F.2d 661 (5th Cir. 1981) (Keogh plan was property of the estate); *In re Mace,* 4 B.C.D. 94 (D.C. Or.1978) (IRA plan was property of the estate); *In re Wilson,* 3 B.C.D. 844 (Bankr. Ct.N.D.Tex.1977) (same).

However, the advent of the Code with the expanded reach of 11 U.S.C. § 541(a)(1) has meant that most, if not all, pension plan funds are included in the estate. See, *e.g., In re Howerton,* 9 B.C.D. 296, 21 B.R. 621 (Bkrtcy.D.Tex.1982); *In re Threewitt,* 9 B.C.D. 38, 20 B.R. 434 (Bkrtcy.D.Kan.1982); *In re Buren,* 6 B.C.D. 1130, 6 B.R. 744 (D.C.M.D.Tenn.1980). In the instant case, the debtor does not challenge the inclusion of the funds as property of the estate and that premise is accepted by the court.

Research does not disclose any published decision directly addressing the issue of whether 29 U.S.C. § 1056(d)(1) and 26 U.S.C. § 401(a)(13), in effect, provide a federal exemption which the debtor may claim under 11 U.S.C. § 522(b)(2)(A).

Since the April 26, 1980 effective date of Kan.Stat.Ann. § 60–2312 (Supp.1981) Kansas debtors have been precluded from selecting as exempt those items enumerated at 11 U.S.C. § 522(d) [4] which is an implementation of 11 U.S.C. § 522(b)(1). However all debtors still have available the exemption referred to at 11 U.S.C. § 522(b)(2). [5] Clause (A) of that subsection permits a debtor to exempt "any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law." Here, debtor Hinshaw contends that 29 U.S.C. § 1056(d)(1) and 26 U.S.C. § 401(a)(13) constitute the type of federal exemption to which 11 U.S.C. § 522(b)(2)(A) refers.

Pursuant to 29 U.S.C. § 1056, the plan must specify that benefits may not be as-

---

**3.** The Bankruptcy Act of 1898 was repealed (P.L. 95–598 Sec. 401) and does not govern this case. Controlling here and in all cases filed from October 1, 1979 forward (P.L. 95–598) are the provisions of the Code which is new title 11 U.S.C.

**4.** The language of the Kansas statute denies debtor exemptions under 11 U.S.C. § 522(*b*)(*1*). But the latter Code provision is

the only authorization for exemption of the items specified under § 522(*d*). If the § 522(d) exemptions were available to debtor Hinshaw it appears he would have some entitlement to the ERISA funds under § 522(d)(10)(E).

**5.** These are sometimes referred to as 'federal nonbankruptcy exemptions', i.e., they are grounded on federal law other than the Bankruptcy Code.

signed or alienated. Similarly, in order for the plan to qualify for federal income tax purposes, the plan must prohibit assignment or alienation. 26 U.S.C. § 401(a)(13). The Treasury Regulation interpreting section 401(a)(13) requires the plan to provide that benefits may not be "anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." 26 C.F.R. § 1.401(a)—13(b)(1) (1982). In compliance with these provisions, both the profit-sharing and the pension plans at hand contain the following clause:

> None of the benefits, payments, proceeds, claims, interest or rights of any participant hereunder shall be subject to any claim of any creditor of any participant, and in particular, the same shall not be subject to attachment or garnishment, or any other legal process by any creditor of the participant, nor shall any such participant have the right to alienate, anticipate, commute, pledge, encumber, or assign any of the benefits or payments or proceeds which he may expect to receive contingently or otherwise under this Agreement . . .

Profit-Sharing Plan, at 48; Pension Plan, at 52.

Following is a representative list of entitlements which a debtor may claim as federally exempt under 11 U.S.C. § 522(b)(2)(A):

—Foreign Service Retirement and Disability payments,

—22 U.S.C. § 1104;

—Social security payments, 42 U.S.C. § 407;

—Injury or death compensation payments from war risk hazards, 42 U.S.C. § 1717;

—Wages of fishermen, seamen, and apprentices, 46 U.S.C. § 601;

—Civil service retirement benefits, 5 U.S.C. §§ 729, 2265;

—Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. § 916;

—Railroad Retirement Act annuities and pensions, 45 U.S.C. § 228(L);

—Veterans benefits, 45 U.S.C. § 352(E);

—Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. § 3101; and

—Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. § 175.

H.R.Rep.No.595, 95th Cong., 1st Sess. 360 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

Many of the statutes that have been recognized as giving rise to a federal exemption of the type here being considered may be characterized as nothing more than prohibitions against assignment or alienation. For example, 22 U.S.C. § 1104 of the Foreign Service Act of 1946 provides:

> None of the moneys mentioned in this title (citations omitted) shall be assignable either in law or equity, or be subject to execution, levy, attachment, garnishment, or other legal process . . .

The parallel provision of the Social Security Act, 42 U.S.C. § 407 reads:

> The rights of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment or other legal process, or to the operation of any bankruptcy or insolvency law.

Although ERISA plan funds are not specifically mentioned in the House Report, the similarity between the provisions of those statutes that are recognized as constituting a federal exemption and the provisions of 29 U.S.C. § 1056, 26 U.S.C. § 401(a)(13) (and the accompanying Treasury Regulation) supports a conclusion that a federal exemption for ERISA plans was intended.

The court finds the decision in *Commercial Mortgage Insurance Inc. v. Citizens National Bank of Dallas,* 526 F.Supp. 510 (N.D. Tex.1981) persuasive. In that case, the issue was whether 29 U.S.C. § 1056(d)(1) and

26 U.S.C. § 401(a)(13)[6] operated as a bar to garnishment of pension benefits by a creditor of the beneficiary. The beneficiary was a medical doctor who participated in both a profit-sharing and a pension plan through his professional association. At the time of the attempted garnishment, the doctor was the sole shareholder and director of the professional association and the sole trustee of the plans, although other employees were participating in the plans. That court discussed at length the nature of the federal nonbankruptcy exemption intended under the ERISA provisions. While the decision did not address the nature of the federal exemption in a bankruptcy proceeding, the reasoning of the court has close relevance.

In *Commercial Mortgage,* the court noted the legislative intent is to ensure that benefits are available for retirement purposes. *Id.* at 518. To allow a creditor to garnish these plans would undermine the protection that Congress intended to give to the plan beneficiaries. A similar analysis of the intended effect of the federal exemption in bankruptcy results in the conclusion reached here. It is also noteworthy that the *Commercial Mortgage* court relied on the interpretation of 26 U.S.C. § 401(a)(13) in the Treasury Regulations which requires that a plan not be subject to attachment, garnishment, levy, execution or other legal or equitable process. 26 C.F.R. § 1.401(a)—13(b)(1) (1979).

In sum, given the legislative history of ERISA and of § 522(b)(2)(A) of the Bankruptcy Code, this court holds that a federal exemption for a tax-qualified ERISA plan may be successfully claimed under 11 U.S.C. § 522(b)(2)(A).

### ORDER

Based upon the foregoing memorandum which constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 752 and Rule 52(a) Federal Rules of Civil Procedure

---

6. Also at issue in the case was the applicability of 29 U.S.C. § 1144(a) which provides that the ERISA statutes supersede state law relating to employee benefit plans. This court need not

IT IS ORDERED that debtor's claim of exemption to his interests in the subject profit-sharing and pension plan funds is allowed and the objections thereto overruled.

address the issue since there are no Kansas statutes which provide an exemption for the pension plans in question.